IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CR-00078-2BO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | REPLY TO RESPONSE IN OPPOSITION |
| v. ) | OF DEFENDANT'S PRO SE MOTION FOR |
| ) | COMPASSIONATE RELEASE |
| ) | |
| NAHSON JAHKEEM SUGGS, ) | |
| ) | |
| Defendant. ) | |

Mr. Nahson Jahkeem Suggs, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with a high-risk chronic medical condition. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Suggs has properly exhausted his administrative remedies by filing his request for emergency release and at home confinement with the Warden of FCI Butner Low on April 27, 2020 (*See* **Exhibit A**, Mr. Suggs release request to Warden of FCI Butner Low) and by filing his request for administrative remedy on July 21, 2020. *See* **Exhibit A**: Request for Administrative Remedy filed July 21, 2020; ("I am in the top medically vulnerable inmates according to the CDC. I have asthma and I am obese. I am in fear for my life and just want to make it home to my kids."). His request for administrative remedies was denied on August 8, 2020 and further pursuing it would be completely futile. *See* **Exhibit C**, Rejection Notice – Administrative Remedy. Mr. Suggs filed his request for release or extension of confinement for emergency medical reasons with the U.S. District Court

1

on June 9, 2020 and August 12, 2020. [D.E. 437 at 2] and *See* **Exhibit D**, Mr. Suggs' emergency filings for release June 9, 2020 and August 12, 2020.

> "There is a lot of things that they are holding back from telling you like we have no soap 6 out of 7 days of the week to wash our hands with, we are forced to have hand to hand contact with staff who haven't been tested for the virus. […] I am in fear because I have severe asthma problems and I'm obese. […] Butner low has had over 650+ cases and nearly 20 deaths. […] Your Honor I have been trouble free for the past two years and plan to stay that way. I will not return back to prison after I leave here." *See* **Exhibit D**, Mr. Suggs' August 12, 2020 emergency request for release.

The government filed a response in opposition to Mr. Sugg's request for emergency medical release on August 5, 2020, and this response follows.

Staff members and inmates have already been infected with COVID-19 at increasingly high rates at FCI Butner Low. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) Most judges from the Eastern District of North Carolina, have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Suggs' sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Suggs' immediate case as well. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

2

Case 4:18-cr-00078-BO   Document 474   Filed 10/02/20   Page 2 of 18

## STATEMENT OF FACTS

On October 2, 2019, Defendant pled guilty to: (1) conspiracy to distribute and possess with intent to distribute a quantity of heroin, in violation of 21 U.S.C. § 846; (2) distribution of a quantity of heroin and aiding and abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; (3) distribution of a quantity of heroin and methoxyacetyl fentanyl, in violation of 21 U.S.C. § 841; (4) use and carry of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and distribution of a quantity of heroin, in violation of 21 U.S.C. § 841. [D.E. 370]. On December 17, 2019, Defendant was sentenced to 123 months' imprisonment, followed by 3 years' supervised release. [D.E. 415]. Defendant is currently serving his sentence at FCI Butner Low with a release date of October 3, 2027. *See* [https://www.bop.gov/inmateloc/; Number 65724-056; last visited August 3, 2020]. On January 1, 2020, Defendant filed a Notice of Appeal with the Fourth Circuit. [D.E. 417]. The appeal is still pending. On June 9, 2020, Defendant filed the instant motion, challenging his conditions of confinement in light of the COVID-19 virus. [D.E. 437 at 2].

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. Due to the potential life or death nature of filings of this type during a global pandemic, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate for this Honorable Court to find that Mr. Suggs meets the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Suggs is unfortunately extremely vulnerable to hospitalization and even death now due to COVID-19 complications combined with this uncontrolled asthma, obesity, and diabetes. Please *see* **Exhibit B**, BOP Medical Record & *See* Current CDC Determinations of High Risk Conditions:

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Therefore, Mr. Suggs' request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

The defendant is—

(I) suffering from a serious physical or medical condition;
(II) suffering from a serious functional or cognitive impairment; or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Suggs' "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the

5

Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Thankfully, heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

6

**ARGUMENT**

**A. This Honorable Court has the authority to rule on this Motion.**

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 160 (2010). Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson,* 562 U.S. at 435. Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id*. The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515-16 (2006). The inquiry is whether Congress has "'clearly state[d]'" that the rule is jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.,* 568 U.S. 145, 153 (2013). "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character." *Id*.

Equitable exceptions to statutory rules have been recognized in the past. *See Holland v. Florida,* 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling"); *Hamer v. Neighborhood Hous. Servs. of Chicago,* 138 S. Ct. 13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture). Circuit courts have recognized equitable exceptions since the Supreme Court's decision in *Ross v. Blake,* 136 S. Ct. 1850 (2016). Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security." H.R. Rep. 115-

7

699 at 22. To construe the law generously to protect the community's safety during a global pandemic fits the purposes of the statute and points towards granting reasonable requests for reducing the detained population in the United States. Therefore, especially given Mr. Suggs' extraordinary situation, in the case sub judice it is appropriate for this Honorable Court to currently process his Compassionate Release Request.

   B. **This Honorable Court has the authority to determine that Mr. Suggs' vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Medical professionals within our country and around the world for that matter have deemed Mr. Suggs' vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Suggs' combined underlying medical conditions of asthma and obesity make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Suggs posed by COVID-19 warrants relief.

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14,

2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which

Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Schneider,* No. 3:14-cr-30036-SEMTSH-1, 2020 WL 2556354 (C.D. Ill. May 20, 2020) ("Indeed, the CDC has identified asthma as a comorbidity that increases the likelihood of serious complications from COVID-19. *See* Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention");

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Suggs, with his current chronic illnesses, risk factors, and lack of access to recommended COVID-19 precautionary measures such as basic handwashing and social distancing, is an extraordinary and compelling circumstance.

C. **Mr. Suggs' Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness or death once they contract COVID-19. The CDC has identified asthma and obesity, Mr. Suggs' chronic conditions, as comorbidities that increases the likelihood of serious complications from COVID-19. *See* Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 2, 2020).

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1] Mr. Suggs is exactly the type of individual intended for compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### D. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Suggs' Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Suggs' compromised physical health, and the unique danger now once he contracts COVID-19 *in a matter of time* while detained, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

Furthermore, there have been no accusations of violent behavior from Mr. Suggs, so to say at this point that he would directly endanger the community is surely a leap, particularly

---

[1] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

considering the progression of his medical conditions which are deteriorating him physically. *See* **Exhibit B**, BOP Medical Record. The Presentence Report in this case lists no victims to any of his crimes. Medical professionals around the world have deemed concentrated population centers, such as prisons, to be hazardous to public health during a pandemic, so having Mr. Suggs remain detained will have a negative impact on community health, for inmates, for employees of prisons, for their families, and for the surrounding communities.

Mr. Suggs' crimes were at least in part related to poor decision-making skills which brought "bad apples" into his social circle whom he thought could help him when he was struggling. In recognition of such, he is devoted to ensuring that those whom surround him not only have his true best interests at heart but those of his children's as well, for they are whom he is living for. Having been sentenced to 123 months in prison has been a once in a lifetime wake-up call for Mr. Suggs and for his family. He now has a release plan in place with an employment opportunity which is ready and waiting for him should he be released in the interests of public health and humane justice. Mr. Suggs' criminal history is in large part related to his addiction to controlled substances. He has grown to become committed to a new way of living. As such, he has been dedicated to rehabilitating himself while detained and has completed the LSCI Butner Drug Abuse Education Course. *See* **Exhibit E**, Certificate of Completion of Drug Abuse Education Course. Furthermore, the records shows that he was not an organizer or leader of the criminal activity (PSR at ¶ 81), that he demonstrated an acceptance of responsibility, and that he assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty (PSR at ¶ 85).

Release at this time would promote respect for the law because Mr. Suggs has served a significant fraction of his sentence, but the time that he has served has been increasingly terrifying

as prisoners such as Mr. Suggs have been keeping up with dire news reports and watching the pandemic close in around them. They are essentially seeing the COVID-19 numbers increasing all around them while begging for basic sanitation supplies such as soap. Mr. Suggs reported that six (6) out of seven (7) days each week, prisoners do not have access to soap to wash their hands. They cannot also socially distance in the prisons. Their beds are not even six feet apart. Mr. Suggs has witnessed other inmates become infected and die from COVID-19 around him while he reports the number of deaths and positive cases to his family each week. It would be misleading to quantify the time Mr. Suggs has spent detained only in days, when each moment he has spent detained is increasingly, unconstitutionally terrifying. Therefore, exploring other options besides continuing his detention at this time would promote respect for the law, while alternatively, continuing a culture of mass incarceration and blind enforcement without regard to humanity or case-by-case analysis would not promote respect for the law.

A reduction or modification of Mr. Suggs' sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Suggs, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief. *See* **Exhibit B**, BOP Medical Record.

Should Mr. Suggs request for compassionate release be approved, he would be reunited with his fiancée and their four (4) young daughters at 1575 Elijah Loftin Road, Kinston, NC 28504. *See* **Exhibit F**, Letters of Support and Good Moral Character from Family and Friends of Mr. Suggs. Mr. Suggs' fiancée and the biological mother of his children is struggling financially to support herself and her four young daughters without Mr. Suggs support. Mr. Suggs is the proud father to Miari, six (6) years old; Arielle, four (4) years old; Chanel, two (2) years old; and Skylar,

who is one (1) year old. Upon release, Mr. Suggs' fiancée, Juquesha Davis, would then be able to rely on Mr. Suggs for familial support and would not need to depend on government assistance.

Mr. Nahson Jahkeem Suggs is a man with marketable skills and an eagerness to advance himself in business, as he plans to enroll in business courses upon his release while simultaneously working with his brother full-time in their family food truck business. *See* **Exhibit F**, specifically the Character Letter from Maquesha Suggs. He will be residing at 1575 Elijah Lifton Road, Kinston, North Carolina, 28504, with his fiancée of more than seven (7) years and his four daughters. *See* **Exhibit F**, Character Letter from Maquesha Suggs. He has previously served in a managerial role as a promotor and manager for Skylight Lounge in Kinston, North Carolina. See PRS, #68, page 18/24, and as such, has transferable skills that will contribute to the success of his future business plans with his brother. Mr. Suggs values being an asset to his community and is the kind of compassionate individual who has a history of freely volunteering at food shelters in Kinston. *See* **Exhibit F,** specifically the Character Letter from Kenyaga Powell. Given his character and values, as well as pressing concerns regarding his immediate family needs, Mr. Suggs poses no risk to the community upon release. His three youngest daughters also have asthma and they are at an increased risk for health complications should they contract COVID-19. They deserve to be raised and comforted in a two-parent home without the everyday risk of knowing that their father could die any day now, as many around their father, Mr. Suggs, have fallen ill and succumbed to death.

## CONCLUSION

Mr. Suggs has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted,

This the 2nd day of October 2020.

                                  GUIRGUIS LAW, PA

                                  /s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Asia Prince
>Assistant United States Attorney
>Asia.Prince@usdoj.gov
>150 Fayetteville Street, Suite 2100
>Raleigh, North Carolina 27601

This 2nd day of October 2020.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney